IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| CHARLES W. MAY | § | |
| | § | |
| v. | § | C.A. NO. C-11-069 |
| | § | |
| LARRY BUSBY, ET AL. | § | |

## OPINION AND ORDER GRANTING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Proceeding pro se, Plaintiff filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that Defendants used excessive force when arresting him and exhibited deliberate indifference to his medical needs.  (D.E. 1).  Pending is Defendants' motion for summary judgment.  (D.E. 82).  Plaintiff has filed a response in opposition.  (D.E. 94).  For the reasons that follow, Defendants' motion for summary judgment is granted.

## I.  JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.  Upon consent of the parties, (D.E. 34, 67), the case was referred to a United States Magistrate Judge to conduct all further proceedings, including entry of final judgment. (D.E. 40); see also 28 U.S.C. § 636(c).

## II.  PROCEDURAL HISTORY

On March 14, 2011, Plaintiff initiated this action against Sheriff Larry Busby; the Live Oak County District Attorney, Judge Elizabeth Ellis, and Judge Jim Huff.  (D.E. 1, at 1).  During an evidentiary hearing held on March 22, 2011, he added as defendants Live Oak County, Deputy Gonzales, Deputy John Doe, and Deputy Jane Doe.  The claims against Sheriff Busby, the Live Oak County District Attorney, Judge Ellis, and Judge Huff were later dismissed.  See May v. Live Oak Cnty., No. C-11-069, 2011 WL 1485650 (S.D. Tex. Mar. 28, 2011) (unpublished) (memorandum and recommendation), adopted by May v. Busby, No. C-11-069,

2011 WL 1484036 (S.D. Tex. Apr. 19, 2011) (unpublished).

On April 21, 2011, Defendant Live Oak County filed a motion to dismiss itself from the action.  (D.E. 18).  This motion was granted in part, providing Plaintiff with fourteen days in which to amend his complaint to allege a valid claim against Live Oak County.  (D.E. 24).  An amended claim was not filed against Live Oak County.  During the initial pretrial conference on May 31, 2011, Plaintiff clarified that he wanted to sue Eric Mendoza instead of Deputy Gonzales, and it was revealed that two unidentified Jane Doe Defendants were Deputy Laura Ramos and Deputy Kathy Calliham.[1]  On August 16, 2011, the final John Doe Defendant was identified as Leon Work.

Defendants Mendoza, Ramos, Calliham, and Work all filed their answer on September 12, 2011.  (D.E. 65, 66).  On January 18, 2012, Defendants collectively submitted this motion for summary judgment.  (D.E. 82).  Plaintiff responded with a brief opposing summary judgment on February 24, 2012.  (D.E. 94).

### III.  PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that Defendants violated his constitutional rights by exercising excessive force when arresting him and by refusing his requests for medical attention.  (D.E. 1). Specifically, he alleges that during the arrest, Defendant Mendoza grabbed and threw him on the hood of a vehicle, placed him in tight hand cuffs, and then threw him in the back of the squad car even though he was cooperating.  He also alleges that Defendants Mendoza, Ramos, Calliham, and Work ignored his requests for medical attention.

---

[1] Defendant Kathy Calliham was previously referred to as Kathy Calihan and listed on the docket sheet as such.  As evident by her affidavit, "Calihan" is incorrect and this Order utilizes her correct name. (D.E. 82-3).

## IV.  SUMMARY JUDGMENT EVIDENCE

Defendants offer the following documents in support of their motion for summary judgment:

| | |
|---|---|
| Ex. A: | Affidavit of Eric Mendoza; |
| Ex. A1: | Jim Wells County Sheriff's Department Offense Report for night of February 20, 2011; |
| Ex. B: | Affidavit of Joshua Olivarez; |
| Ex. B1: | Report of Joshua Olivarez for night of February 20, 2011; |
| Ex. C: | Affidavit of Kathy Calliham; |
| Ex. C1: | Medical screening records of Kathy Calliham on night of February 20, 2011 concerning Plaintiff; |
| Ex. D: | Affidavit of Laura Ramos; and |
| Ex. E: | Affidavit of Leon Work. |

Plaintiff offers no additional evidence in response to Defendants' summary judgment motion, but he reiterates his original allegations.  (D.E. 94, at 2).

To the extent that the parties do not disagree on the operative facts forming the basis of this action, the summary judgment evidence, including the Plaintiff's testimony at the March 22, 2011 evidentiary hearing, establishes the following:

On February 20, 2011, Plaintiff drank four beers throughout the afternoon, followed by two prescription sleep-aids before going to bed.  That night, Deputy Joshua Olivarez of Jim Wells County was dispatched to respond to a report of a break-in attempt at a residence within Live Oak County, Texas.  (D.E. 82-2, at 2).  Upon his arrival, he identified and detained Plaintiff under suspicion of attempting to break into the residence.  Id. at 3.  At the time, Plaintiff told him that there were people shooting goats and he was attempting to investigate the matter.  Id.

Deputy Olivarez reported that he smelled the odor of alcohol from Plaintiff's breath and body. Id.; (D.E. 82-2, at 6).

Shortly thereafter, Deputy Eric Mendoza of Live Oak County arrived.  (D.E. 82-1, at 2; D.E. 82-2, at 3).  After asking Plaintiff about what he was doing on the property, he responded that he had run out of his house in order to stop people from killing sheep.  (D.E. 82-1, at 3). During the conversation, Deputy Mendoza noticed that his speech was slurred, he had difficulty standing on his own, and he smelled of alcohol.  Id.  He handcuffed Plaintiff and placed him in the back of his patrol car.  Id.; (D.E. 82-2, at 3).

Deputy Mendoza then spoke with Joyce Cuyler, the home owner who reported the break-in attempt.  (D.E. 82-1, at 3).  She recounted that Plaintiff had ripped the bannister from her stairs and was using it to break into her house.  Id.  Deputy Mendoza again spoke with Plaintiff, informing him that he was under arrest for criminal mischief and public intoxication as well as being issued a criminal trespass warning.  Id.  He subsequently took him to the Live Oak County Jail and turned him over to the custody of the jailer, Kathy Calliham.  Id.; (D.E. 82-3, at 2).

During the booking process, Ms. Calliham screened Plaintiff for medical conditions using forms issued by the state of Texas.  (D.E. 82-3, at 2-3, 5-6).  She did not note that he was suffering from any current medical problems.  Id. at 3, 5-6.  After this booking process, she did not come into contact with Plaintiff again.  Id. at 3.

The next morning, on February 21, 2011, another jailer, Laura Ramos, retrieved Plaintiff from his jail cell for his appearance before a magistrate.  (D.E. 82-4, at 2).  After escorting Plaintiff back to his cell, she did not have any further contact with him.  Id. at 3.  Leon Work, another jailer, delivered breakfast and lunch to the inmates.  (D.E. 82-5, at 2).  Plaintiff was later released from custody that afternoon.  (D.E. 82-3, at 3; D.E. 82-4, at 3).

4

## V.  DISCUSSION

Defendants move for summary judgment, arguing Plaintiff has failed to support his claims with evidence, as well as because they are protected by qualified immunity.  (D.E. 82, at 2).

**A.**     **The Legal Standard For A Summary Judgment Motion.**

Summary judgment is appropriate when there is no disputed issue of material fact, and one party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Courts must consider the record as a whole, including all pleadings, depositions, affidavits, interrogatories and admissions on file, in the light most favorable to the non-movant.  Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002) (citations omitted).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact and informing the court of the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which support its contention.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 913 (5th Cir. 1992) (citations omitted).  Any controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party.  See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988) (citation omitted).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Fields v. City of S. Houston, Tex., 922 F.2d 1183, 1187 (5th Cir. 1991) (citation omitted).  The non-movant cannot merely rest on the

allegations of the pleadings, but must establish that there are material controverted facts in order to preclude summary judgment.  Fed. R. Civ. P. 56(e); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986) (citation omitted); <u>Jones v. Sheehan, Young & Culp, P.C.</u>, 82 F.3d 1334, 1338 (5th Cir. 1996) ("Rule 56 ... saddles the non-movant with the duty to 'designate' the specific facts in the record that create genuine issues precluding summary judgment, and does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition.") (citations omitted).  Summary judgment is proper if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof.  <u>Celotex</u>, 477 U.S. at 322-23; <u>ContiCommodity Servs., Inc. v. Ragan</u>, 63 F.3d 438, 441 (5th Cir. 1995) (citations omitted).

**B.      Defendants Are Entitled To Qualified Immunity.**

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense.  <u>McClendon v. City of Columbia</u>, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam) (citation omitted).  "To discharge this burden, a plaintiff must satisfy a two-prong test."  <u>Atteberry v. Nocana Gen. Hosp.</u>, 430 F.3d 245, 253 (5th Cir. 2005).  "First, he must claim that the defendants committed a constitutional violation under current law.  Second, he must claim that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of."  <u>Id.</u> (citations omitted).  While it will often be appropriate to conduct the qualified immunity analysis

by first determining whether a constitutional violation occurred and then determining whether

the constitutional right was clearly established, that ordering of the analytical steps is no longer

mandatory.  Pearson, 555 U.S. at 236-37 (receding from Saucier v. Katz, 533 U.S. 194 (2001)).

       **1.**       **Step 1 – Plaintiff has failed to establish a constitutional violation.**

Plaintiff advances an excessive force claim against Defendant Mendoza, as well as

additional claims against Defendants Ramos, Calliham, and Work for denying him of his right to

medical care.  (D.E. 1; D.E. 94, at 2).

       **a)**       **Plaintiff has not demonstrated that Defendant Mendoza's application of force during the arrest resulted in a constitutionally cognizable injury.**

A claim for the excessive use of force during an arrest is examined by the Fifth Circuit

through the lens of the Fourth Amendment right against unreasonable seizures:

> To prevail on an excessive-force claim, [the plaintiff] must
> establish: "(1) injury, (2) which resulted directly and only from a
> use of force that was clearly excessive, and (3) the excessiveness
> of which was clearly unreasonable."  "[A]n injury is generally
> legally cognizable when it results from a degree of force that is
> constitutionally impermissible-that is, objectively unreasonable
> under the circumstances."  "The objective reasonableness of the
> force, in turn, depends on the facts and circumstances of the
> particular case, such that the need for force determines how much
> force is constitutionally permissible."  The test for reasonableness
> must consider "whether the suspect poses an immediate threat to
> the safety of the officers or others, and *whether he is actively
> resisting arrest* or attempting to evade arrest by flight."

Collier v. Montgomery, 569 F.3d 214, 218-19 (5th Cir. 2009) (citations omitted) (emphasis in

original).  Although the Fifth Circuit no longer requires a showing of a "significant injury,"

Tarver v. City of Edna, 410 F.3d 745, 752 (5th Cir. 2005) (citation omitted), an injury is not

legally cognizable if it is merely de minimis because such an "amount of force or contact would

be too nominal to constitute a constitutional violation."  Ikerd v. Blair, 101 F.3d 430, 434 (5th Cir. 1996); see also Glenn v. City of Tyler, 242 F.3d 307, 314 (5th Cir. 2001) ("handcuffing too tightly, without more, does not amount to excessive force").

Defendants contend that Plaintiff has not presented sufficient evidence to overcome Defendant Mendoza's qualified immunity defense.  They emphasize that not only was Defendant Mendoza's use of force minimal, but it was also objectively reasonable under the circumstances given that there was reason to believe Plaintiff recently attempted to break into a residence and was still visibly intoxicated.  (D.E. 82, at 8).  Defendant Mendoza testified that his only physical contact with Plaintiff was during the arrest, when he "plac[ed] the handcuffs on [Plaintiff's] wrists behind his back and [held] him by the arm while walking him to [the] patrol car ... and from [the] patrol car to the booking desk in the Live Oak County Jail."  (D.E. 82-1, at 3).  While he concedes that Plaintiff did not resist arrest, he maintains that "the only force ... used was minimal which included the holding of [Plaintiff's] arm and the placing of his arms behind his back when putting on the handcuffs."  Id.  Defendant Mendoza also swears that "[a]t no time did [Plaintiff] complain about the handcuffs being too tight."  Id. at 3-4.  This account of events was corroborated by Deputy Olivarez, who testified that "[t]he only force I observed Deputy Mendoza using with [Plaintiff] was placing the handcuffs on [him] and assisting him into the back seat of Deputy Mendoza's patrol car."  (D.E. 82-2, at 3).

Plaintiff counters that Defendant Mendoza did use excessive force in his arrest and references his "original statements," (D.E. 94, at 2), which presumably consist of the testimony given during the March 22 evidentiary hearing.  Although Plaintiff never explicitly referred to the statements he gave at that hearing as such in his response to this summary judgment motion,

8

a pro se litigant's response to a motion for summary judgment must be read liberally.  McCrae v. Hankins, 720 F.2d 863, 865 (5th Cir. 1983).  Given that his first chance to discuss his claim with the Court was at the hearing, it is very probable that these are the "original statements" he refers to in his summary judgment response.  (D.E. 94, at 2).  Furthermore, because Plaintiff's testimony at the hearing was given under penalty of perjury, it constitutes competent summary judgment evidence sufficient to raise a genuine issue of material fact.  See Grimon v. Collins, 30 F.3d 1491, 1994 WL 398014, at *1 (5th Cir. July 18, 1994) (per curiam) (unpublished) (plaintiff's allegation at Spears hearing that defendants attacked him without provocation during an arrest and caused injuries raised a genuine issue of material fact on excessive force claim and rendered magistrate judge's grant of summary judgment improper) (citations omitted); Bookman v. Shubzda, 945 F. Supp. 999, 1002-03 (N.D. Tex. 1996) (where plaintiff proceeds in forma pauperis, the testimony given in a Spears hearing was competent summary judgment evidence).

    At the March 22, 2011 hearing, Plaintiff explained that, after drinking alcohol and taking his prescription sleep-aids, he awoke in the middle of the road in front of his house.  An officer later identified as Deputy Mendoza approached him, and without warning, grabbed and threw him on the hood of a vehicle.  The arresting officer then handcuffed him "very tightly" before throwing him into the back of the car.  Although Plaintiff testified that he asked Deputy Mendoza why he was being treated this way, the officer simply told him that he was being arrested for public intoxication and trespass.  His request to return home to retrieve clothing and his billfold was refused.  Plaintiff noted that he experienced some "problems" the next morning and was "very ill," but provided no specifics regarding the nature and extent of any injury specifically flowing from Deputy Mendoza's use of force.

9

Even after drawing all inferences in the non-movant's favor, Plaintiff has failed to reference any actual injury resulting from that use of force that was more than <u>de minimis</u> either at the evidentiary hearing or in his summary judgment response brief.  Although he complained about unspecified "problems" and being "very ill" the morning after the arrest, he did not attribute his condition to Deputy Mendoza's application of force on him.[2]  Plaintiff also asserts that he is "disabled with 'terminal Liver disease and sufficient mental disease,'" but again does not accuse Defendant Mendoza of being responsible for these medical ailments or aggravating these apparently pre-existing conditions.  (D.E. 94, at 2).  Moreover, the mere application of tight handcuffs has been found to constitute a <u>de minimis</u> injury as a matter of Fifth Circuit law. <u>Glenn</u>, 242 F.3d at 314.  Because Plaintiff has failed to show that he suffered a cognizable injury resulting from Defendant Mendoza's use of force during the arrest, his excessive force claim must be dismissed.

> **b)** **Plaintiff has not shown that any deliberate indifference by Defendants Mendoza, Ramos, Calliham, and Work resulted in an injury.**

The Fifth Circuit has provided that "[t]he constitutional right of a pretrial detainee to medical care arises from the due process guarantees of the Fourteenth Amendment."  <u>Mace v. City of Palestine</u>, 333 F.3d 621, 625 (5th Cir. 2003) (citing <u>Wagner v. Bay City, Tex.</u>, 227 F.3d 316, 324 (5th Cir. 2000)); <u>Nerren v. Livingston Police Dep't</u>, 86 F.3d 469, 474 (5th Cir. 1996) (contrasting the Fourteenth Amendment due process rights of pretrial detainees from the Eighth

---

[2] Given that Plaintiff admitted to drinking alcohol in conjunction with taking sleeping pills, it is not surprising that he would be feeling ill the next morning.

Amendment rights of convicted prisoners) (citations omitted).[3]  Generally, "[a] pretrial detainee's right to medical care is violated if 'an officer acts with deliberate indifference to a substantial risk of serious medical harm and resulting injuries.'"  Brown v. Strain, 663 F.3d 245, 249 (5th Cir. 2011) (quoting Mace, 333 F.3d at 625).

The Fifth Circuit has further explained that in order "[t]o show subjective deliberate indifference, a plaintiff must present evidence: (1) that each defendant had subjective knowledge of 'facts from which an inference of substantial risk of serious harm could be drawn;' (2) that each defendant actually drew that inference; and (3) that each defendant's response to the risk indicates that the appellee 'subjectively intended that harm to occur.'"  Tamez v. Manthey, 589 F.3d 764, 770 (5th Cir. 2009) (per curiam) (quoting Thompson v. Upshur Cnty., TX, 245 F.3d 447, 458-59 (5th Cir. 2001)).  Neither the mere negligence nor gross negligence of jail officials will give rise to an inference of deliberate indifference.  Thompson, 245 F.3d at 459 (citation omitted); Hare v. City of Corinth, Miss., 74 F.3d 633, 645 (5th Cir. 1996) (en banc) (collecting cases).

Defendants maintain that Plaintiff cannot survive this summary judgment motion because neither Defendants Mendoza, Ramos, Calliham, nor Work were aware of facts from which they could have inferred he was at a substantial risk of serious harm.  (D.E. 82, at 9).  Defendant Mendoza testified that he did not notice Plaintiff having any condition that required immediate medical care.  (D.E. 82-1, at 4).  He also denied hearing him make any request for medical

---

[3] Throughout the motion for summary judgment, Defendants alternate between citing cases involving pretrial detainees and convicted inmates.  While a pretrial detainee's rights are based on the Fourteenth Amendment right to due process rather than the Eighth Amendment right to be free from cruel and unusual punishment, the Fifth Circuit "has recognized that there is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care."  Gibbs v. Grimmette, 254 F.3d 545, 548 (5th Cir. 2001) (citation omitted).

attention that night.  Id.  Defendants Calliham, Ramos, and Work similarly aver that they did not observe Plaintiff suffering from any medical problem that caused them to believe that he needed medical attention when they were in contact with him, nor did they hear him request medical assistance.  (D.E. 82-3, at 3; D.E. 82-4, at 2; D.E. 82-5, at 2).  Aside from a 2007 diagnosis of "terminal hepatitis C," Defendant Calliham did not note any abnormalities when she screened him for medical conditions.  (D.E. 82-3, at 2-7).  Finally, Defendants argue that Plaintiff did not allege any injury resulting from the failure to provide medical treatment while he was held in custody.  (D.E. 82, at 11).

In response, Plaintiff again references his "original statements" made at the March 22, 2011 hearing and insists that he "did ask for medial [sic] help."  (D.E. 94, at 2).  During the hearing, he testified that the arresting officer denied him medical care without providing additional details about the incident.  However, he denied asking the arresting officer for a nurse. After he woke up the next morning, Plaintiff asked for a nurse because he was not feeling well. Two jailers, a male and a female, replied that there was no medical personnel available.  He also explained that the male jailer "was doing the feeding."

Based on the summary judgment evidence, Plaintiff has not established that he suffered any injury stemming from Defendants' refusal to provide him medical treatment.  At no time during the evidentiary hearing did Plaintiff give any information about any injury he suffered because he was unable to see a nurse.  In addition, he has not attested to suffering from any continuing pain since he was released on bond.  His bare assertion that he has "terminal Liver disease and sufficient mental disease," (D.E. 94, at 2), has no bearing on this case because he has not shown that these medical ailments were caused by Defendants' refusal to provide medical

assistance.  Although Plaintiff alluded to visiting with various medical personnel and spoke about the various medications he was taking, he did not testify that his medical condition was made worse in any way due to Defendants' failure to oblige his requests for medical attention.

Plaintiff appears to complain about the mere fact that he was not given prompt medical treatment; but without an attendant injury, he cannot recover against Defendants for a violation of his constitutional right to medical care.  See Wagner, 227 F.3d at 324 ("Liability for failing to provide [medical] care attaches if the plaintiff can show that a state official acted with deliberate indifference to a substantial risk of serious medical harm and that injuries resulted.") (emphasis added) (citing Hare, 74 F.3d at 647-48).  Therefore, Plaintiff's claims that Defendant Mendoza, Ramos, Calliham, and Work violated his constitutional right to medical care are dismissed.

**2.      Step 2 – Objective Reasonableness.**

Because plaintiff has failed to state a constitutional violation as to Defendants regarding any of his claims, the Court is not required to examine whether their actions were reasonable.  See Saucier, 533 U.S. at 201 (if the facts alleged do not establish that the officer's conduct violated a constitutional right, then the qualified immunity analysis need proceed no further and qualified immunity is appropriate).

## VI.  CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment, (D.E. 82), is GRANTED, and this action, (D.E. 1), is DISMISSED.

ORDERED this 15th day of March 2012.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE